UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**SOCORRO MARINES DIAZ**,

    **Petitioner,**

v.                                           Case No. 8:19-cv-1405-WFJ-JSS

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

    **Respondent.**
_____/

## ORDER

Socorro Marines Diaz timely filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and supporting appendix (Doc. 2). Respondent filed a response in opposition (Doc. 10), along with portions of the state court record (Docs. 10-2 through 10-4). Mr. Diaz filed a reply. (Doc. 11.) Upon consideration, the Court denies the petition.

### Procedural History

A state court jury convicted Mr. Diaz of trafficking in cocaine. (Doc. 10-2, Ex. 11.) The state trial court sentenced him to 30 years in prison, with a 15-year minimum mandatory term. (Doc. 10-2, Ex. 12.) The state appellate court *per curiam* affirmed the conviction and sentence. (Doc. 10-2, Ex. 18.) Mr. Diaz sought postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 10-2, Exs. 20, 24; Doc. 10-3,

1

Exs. 25, 27.) The state court denied Mr. Diaz's claims. (Doc. 10-3, Exs. 30, 36.) The state appellate court *per curiam* affirmed the denial of relief. (Doc. 10-3, Ex. 41.)

## Factual Background[1]

Mr. Diaz arranged to sell two kilograms of cocaine to a confidential informant ("CI") on April 22, 2010. The CI notified police. Police surveilled Mr. Diaz as he drove to meet the CI with the drugs. Police conducted a vehicle stop. Mr. Diaz was the only occupant in the vehicle. Police found bricks of what appeared to be cocaine inside of a couch cushion located in the vehicle's backseat. A search of Mr. Diaz's home revealed a matching couch cushion. A crime laboratory analyst testified that the bricks were cocaine, that one weighed 995.4 grams, and that the other weighted 1,012.02 grams.

## Standards Of Review

**The AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[1] The factual background is based on the trial transcript and appellate briefs.

2

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

3

The state appellate court affirmed the denial of Mr. Diaz's postconviction motion without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

**Ineffective Assistance Of Counsel**

Mr. Diaz alleges ineffective assistance of trial counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id*. at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id*. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Mr. Diaz must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691. To demonstrate prejudice, Mr. Diaz must show "a reasonable probability

that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

### Exhaustion Of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To establish prejudice, a petitioner "must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892.

## Discussion

**Ground One**

Mr. Diaz argues that trial counsel was ineffective for advising him not to testify. He asserts that he informed counsel he wanted to testify, but that counsel advised him that he would risk his and his family's safety by testifying because the CI "had a long history of violence and was a very dangerous person." (Doc. 1, p. 4.) Mr. Diaz states that counsel agreed with him that his and his family's safety "may be of concern" if he testified and advised that he should not testify. (*Id.*)

The state court conducted an evidentiary hearing on Mr. Diaz's claim. Trial counsel testified that the CI was a former high-ranking gang member with a long criminal history who had been involved in many drug transactions. (Doc. 10-3, Ex. 34, p. 7.) Counsel testified that she told Mr. Diaz several attempts were made to kill the CI during the pendency of the case. (*Id.*, p. 6.) Counsel testified that she informed Mr. Diaz of the CI's background and recalled conversations during which Mr. Diaz expressed concerned about his and his family's safety. (*Id.*, pp. 7-8.) She recalled telling him that his concerns were legitimate and that safety might be an issue if Mr. Diaz testified. (*Id.*, p. 8.)

Counsel stated that Mr. Diaz initially wanted to testify and expressed his desire to the trial court. (*Id.*, pp. 9-10.) She agreed that Mr. Diaz changed his mind after talking to her, but she did not recall the substance of their discussion during the trial and did not know why Mr. Diaz ultimately changed his mind. (*Id.*, pp. 10, 14.) Counsel testified that she routinely discusses risks of testifying with her clients but that she never makes the decision whether to testify for a client. (*Id.*, pp. 11-12.)

Counsel explained that her trial strategy was to attack the CI's credibility, and that she did not think it was worthwhile for Mr. Diaz to testify because he was not able to explain why drugs were in the vehicle. (*Id.*, pp. 15-16.) Rather, counsel believed that Mr. Diaz wanted to testify about events leading up to the recovery of the drugs. (*Id.*, p. 15.) Therefore, counsel believed that Mr. Diaz's proposed testimony would not support the strategy of attacking the CI's credibility. (*Id.*, p. 16.) Trial counsel advised Mr. Diaz not to testify. (*Id.*, pp. 15, 22.) She testified that she so advised him in part

7

based on trial strategy and in part because she believed his safety concerns were legitimate. (*Id.*, pp. 22-23.)

Mr. Diaz testified that trial counsel did not tell him about the CI's background or that attempts were made to kill the CI. (*Id.*, pp. 24, 28.) Mr. Diaz testified that counsel informed him that the CI was a very dangerous person and that his and his family's safety would be in danger, and told him not to testify. (*Id.*, pp. 25-26.) Mr. Diaz testified that this information affected his decision about testifying. (*Id.*) Mr. Diaz stated that he wanted to testify until the possibility of threats to his family arose, and that he did not testify because he was concerned for his safety. (*Id.*, pp. 28-32.) Mr. Diaz stated that he would have testified that he did not receive calls from the CI, and would have testified about the vehicle stop and arrest. (*Id.*, pp. 26-27.) Mr. Diaz agreed that he did not have any explanation for why the drugs were in the vehicle. (*Id.*, p. 27.)

The state court denied Mr. Diaz's ineffective assistance of counsel claim. It started by discussing his argument:

> Defendant alleges that his trial counsel was ineffective for not allowing Defendant to testify in his own defense. Defendant alleges that he wanted to testify at both the hearing on his motions to suppress and in his own defense at trial, but that he was coerced by counsel to remain silent and threatened about the safety of his family if he chose to testify.[2] In support of this claim, Defendant outlines the testimony he purportedly would have given which includes a statement that he never received any phone calls from [the CI], an explanation of "everyday preparations" for all of his "suspicious movement" on the morning of April 22, 2010, and a detailed declaration of his innocence and purported wrongful treatment by law enforcement. Defendant concludes that his proposed testimony

---

[2] The state court's order refers to Mr. Diaz's potential testimony at the suppression hearing. Ground One of Mr. Diaz's § 2254 petition addresses Mr. Diaz's potential testimony at trial. It does not specifically raise the question of his testifying at the suppression hearing.

8

would have "caused the Court to rethink its decision from a determination not to suppress evidence" and would have given the jury reasonable doubt regarding the trial results.

(Doc. 10-3, Ex. 36, pp. 3-4.)

The postconviction court set out a detailed summary of the evidentiary hearing testimony and continued:

> After carefully considering the evidentiary hearing testimony presented by Defendant and his trial defense counsel . . . and observing the demeanor of both witnesses, the Court finds the testimony offered by [counsel] to be credible and that of Defendant not credible in the least. Considering the testimony of both witnesses in conjunction with relevant portions of the trial transcript . . . the Court finds that Defendant—after being advised by the trial judge that the ultimate decision whether to testify at trial was his own decision to make—voluntarily agreed with his trial counsel's recommendation that he not take the stand. Considering Defendant's proposed testimony and the circumstances of this case (some of which will be discussed in more detail below), the Court further finds that Defendant's trial counsel's recommendation, discouraging Defendant from testifying at trial, was not unreasonable or deficient.

(*Id.*, pp. 6-7.)

In discussing a claim about postconviction counsel's performance that Mr. Diaz has not raised in the § 2254 petition, the state court addressed the circumstances of the case it alluded to above and made its conclusions about Mr. Diaz's postconviction claims:

> Defendant alleges . . . that his proposed testimony would have included:
>
> > (a) statements that he never made or received any phone calls from [the CI];
> >
> > (b) an innocent explanation for his daily activities which were characterized as "suspicious" movements by ICE agents;

9

(c) detailed declarations of his innocence, stating "at no time did he try to sell [the CI] cocaine or any other drug," that he "never set up a time or a place for a drug exchange of any kind," and that he never approached [the CI] at any time or at any pace [sic];

(d) a declaration that Defendant "has never sold drugs of any kind;" and

(e) allegations that there was "no verification of any kind of activity, illegal or unlawful, before the Defendant was illegally and unlawfully stopped, thrown to the ground at gun point, cuffed with his hands behind his back, while laying on his stomach, held in a patrol car, while his vehicle was driven two miles away by a Sheriff Officer, to a substation, where it was searched for drugs, where none had been found where the incident took place."

Contrary to Defendant's allegations, however, even if Defendant had presented this testimony at the evidentiary hearing and during his jury trial, it would not make a difference in the outcome. Despite his multiple excuses and proposed "innocent explanations" for his activities on the date of his arrest, Defendant's proposed testimony fails to offer any reasonable explanation for the fact that two kilos of cocaine were located in a couch cushion found by law enforcement behind the driver's seat of a vehicle that Defendant was the driver and sole occupant of at the time of his arrest. It was such a distinguishable couch cushion that the prosecutor described it as something that "dates back to the Eisenhower administration." Yet, an *identical* couch cushion was also discovered by law enforcement during the execution of a search warrant *at Defendant's residence*. Considering all the testimony and evidence introduced in this case, the Court finds that even if Defendant had given his proposed testimony at the suppression hearing, the Court still would have denied the defense motion(s) to suppress, and if Defendant had given the same proposed testimony at trial, it would not have made a difference in the jury's verdict.

In summary, the Court's confidence in the outcome of this case has not been undermined by any of Defendant's allegations. Defendant has failed to establish deficient performance, much less show that he was prejudiced by defense counsel's performance in this matter. Thus, the Court finds that Defendant has failed to demonstrate an entitlement to postconviction relief.

(*Id.*, pp. 7-9) (state court's footnotes omitted) (emphasis in original).

Mr. Diaz contends that the state court's rejection of his claim was unreasonable. First, he contends that the credibility finding was unreasonable because his testimony was consistent with his attorney's testimony and "Defense counsel's testimony substantiated" his claims. (Doc. 1, p. 5.)

However, there were inconsistencies between the testimony of Mr. Diaz and trial counsel. Counsel testified that she told Mr. Diaz about the CI's background and the threats to the CI, but Mr. Diaz denied that she told him this information. Additionally, counsel testified that Mr. Diaz was worried about his safety and that she agreed with Mr. Diaz's concerns, whereas the gist of Mr. Diaz's testimony was that counsel coerced him into not testifying by raising the question of his and his family's safety. Thus, counsel's testimony did not fully support Mr. Diaz's arguments, and it was not unreasonable for the state court to make a credibility determination to resolve conflicts in the evidentiary hearing testimony.

The state court's credibility determinations that counsel was credible and Mr. Diaz was not credible are findings of fact that are presumed correct. *See Rolling v. Crosby*, 438 F.3d 1296, 1301 (11th Cir. 2006) ("The factual findings of the state court, including the credibility findings, are presumed to be correct[.]"); *see also Consalvo v. Sec'y, Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) ("Federal courts have no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court but not by them. We consider questions about the credibility and demeanor

of a witness to be questions of fact.") (internal quotation marks and citations omitted). Mr. Diaz does not rebut the presumption of correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (stating that a petitioner bears the burden of rebutting the presumption of correctness afforded to a state court's factual finding by presenting "clear and convincing" evidence).

Mr. Diaz also asserts that the state court failed to consider that he expected counsel would act in his best interest and provide him with "proper advice." (Doc. 1, pp. 5-6.) He asserts that he chose not to testify "based on counsel's hyped-up concerns over everyone's safety if he testified." (*Id.*, p. 6.) He also states that the record shows he wanted to testify but changed his mind after speaking with counsel. (*Id.*)

Mr. Diaz does not show that the state court failed to take these arguments into account, or that its ruling on his claim was unreasonable. The state court recognized that Mr. Diaz asserted counsel coerced him into remaining silent, reviewed the evidentiary hearing testimony in detail, found counsel's testimony credible, and found that the state court record showed that Mr. Diaz voluntarily chose not to testify. The trial transcript demonstrates that the trial court informed Mr. Diaz that whether to testify was his decision. (Doc. 10-2, Ex. 9, p. 308.) Mr. Diaz twice told the trial court he wanted to testify, and when the trial court asked Mr. Diaz if he had decided not to take the stand, and Mr. Diaz said, "no[,] not exactly." (*Id.*, pp. 308-09, 372-73.) After a recess, however, Mr. Diaz stated that he made the decision not to testify and that he did not need more time to speak with his attorneys. (*Id.*, p. 373.) Mr. Diaz did not protest or say that he felt coerced when he ultimately told the trial court he decided

12

not to testify, and the record suggests that he knew he could change his mind about testifying.

The testimony the postconviction court found credible shows that Mr. Diaz was concerned about his safety, that counsel shared the concern, and that counsel advised him against testifying based on this concern and also as a matter of trial strategy. Mr. Diaz does not show that the state court unreasonably applied the deficient performance prong of *Strickland* because he does not show that counsel's performance fell "outside the wide range of professionally competent assistance" under the circumstances. *Strickland*, 466 U.S. at 690.

Furthermore, Mr. Diaz does not show that the state court unreasonably applied *Strickland*'s prejudice prong. He admitted in his evidentiary hearing testimony that he could not explain why the drugs were in the vehicle. The state court did not unreasonably find that considering the evidence presented at trial, Mr. Diaz failed to show a reasonable probability that the outcome of the trial would have been different had he testified as proposed.

Mr. Diaz does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground One.

**Ground Two**

Mr. Diaz argues that trial counsel was ineffective for failing to adequately argue his motions to suppress evidence and statements. Specifically, he claims that at the suppression hearing, trial counsel did not cite favorable, relevant case law. Mr. Diaz

13

argues that "a line of cases" that supported suppression "was directly applicable to Petitioner's case and should have been presented to the Court in the motions to suppress and/or at the evidentiary hearing." (Doc. 1, p. 7.)

Respondent argues that his claim is barred from review. As Respondent notes, Mr. Diaz argued in his Rule 3.850 postconviction motion that trial counsel was ineffective for failing to adequately argue pretrial motions. (Doc. 10-3, Ex. 27, pp. 13-25.) But Mr. Diaz did not argue that trial counsel was ineffective for failing to cite relevant case law. (*Id.*) He did not make that argument until he filed his initial brief on postconviction appeal. (Doc. 10-3, Ex. 39, pp. 26-29.)

Under Florida law, a petitioner cannot raise a new claim for the first time on postconviction appeal. *See Thomas v. State*, 838 So.2d 535, 539 (Fla. 2003) (finding an ineffective assistance claim that was raised on appeal but not in the state circuit court procedurally barred and stating that "[a] claim of ineffectiveness of trial counsel must be raised in [the state] circuit court, not [an appellate court], for—above all—it is [an appellate court's] job to *review* a circuit court's ruling on a rule 3.850 claim, not to *decide* the merits of that claim"). Therefore, Mr. Diaz's claim is unexhausted because he did not present it to the state circuit court in his Rule 3.850 postconviction motion. *See, e.g., Pruitt v. Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process[.]") (quoting *Boerckel*, 526 U.S. at 845).

Indeed, the State argued this procedural bar in the answer brief, asserting that the claim was not properly raised on collateral appeal because it was not presented to the state postconviction court. (Doc. 10-3, Ex. 40, p. 19.) The state appellate court affirmed the state court's order by issuing a *per curiam* affirmance without discussion. But this Court may presume that the state appellate court applied the state procedural bar cited by the State, thereby confirming that Mr. Diaz did not follow the necessary procedure to exhaust the claim in state court. *See Bennett v. Fortner*, 863 F.2d 804, 807 (11th Cir. 1989) ("This circuit to a point has presumed that when a procedural default is asserted on appeal and the state appellate court has not clearly indicated that in affirming it is reaching the merits, the state court's opinion is based on the procedural default."); *see also Ziegler v. Crosby*, 345 F.3d 1300, 1310 (11th Cir. 2003) ("When a state court issues a summary denial on a claim that is procedurally barred and nothing in the disposition discusses the merits of the federal claim, we 'cannot assume that had the [state court] explained its reasoning, it would have reached the merits of [the] claim.'") (quoting *Kight v. Singletary*, 50 F.3d 1539, 1545 (11th Cir. 1995)).

Mr. Diaz did not satisfy the exhaustion requirement. That he raised a similar claim in state court is insufficient because a petitioner may not present a particular factual instance of ineffective assistance of counsel in his federal petition that was not first presented to the state court. *See Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344-45 (11th Cir. 2004) (stating that a petitioner is required to bring his claims in state court "such that the reasonable reader would understand each claim's particular legal basis and specific factual foundation"); *Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir.

15

1994) (rejecting the petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court"); *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992) ("[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously.").

Because Mr. Diaz cannot return to state court to raise the claim in an untimely postconviction motion, *see* Fla. R. Crim. P. 3.850(b), his claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Mr. Diaz does not establish that an exception applies to overcome the default. *See id*. Therefore, Ground Two is barred from federal habeas review.

**Ground Three**

Mr. Diaz argues that he should have been permitted to call the CI as a defense witness. Mr. Diaz fails to allege any federal constitutional violation in Ground Three. Therefore, the claim is not cognizable in a § 2254 proceeding. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

Even if the claim is liberally construed as raising a federal constitutional claim, any federal claim is unexhausted. In his appellate brief, Mr. Diaz argued that the trial court erred in denying him an opportunity to call the CI. (Doc. 10-2, Ex. 15, pp. 18-24). But he raised this claim solely as a matter of state evidentiary law. (*Id*.). Mr. Diaz

did not raise a federal claim or allege that his federal constitutional rights were violated. (*Id.*)

Mr. Diaz's failure to identify the federal nature of the claim on direct appeal leaves the exhaustion requirement unsatisfied. *See Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) ("The purpose of the exhaustion requirement is straightforward: the petitioner must have given the state courts a 'meaningful opportunity' to address his federal claim. . . . The crux of the exhaustion requirement is simply that that petitioner must have put the state court on notice that he intended to raise a federal claim."). Mr. Diaz cannot return to state court to exhaust a federal claim in an untimely, successive appeal. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within 30 days of the rendition of a sentence). Therefore, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Mr. Diaz has not shown that either the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default. *See id.* Ground Three is barred from federal habeas review.

Accordingly, the Court **ORDERS**:

1. Mr. Diaz's petition (Doc. 1) is **DENIED**.
2. The **CLERK** shall enter judgment accordingly and is directed to **CLOSE** this case.
3. Mr. Diaz is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's

denial of his petition. 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Mr. Diaz must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Mr. Diaz has not made the requisite showing. Because Mr. Diaz is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on July 12, 2022.

_____
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**